will now hear Cooper v. The City of Tulsa 22-5034. And on this case we gave some extra time to the amicus parties so, and you've already I guess discussed how you're splitting that up just so you're aware you're in charge of managing your own time so try to be aware of not stepping on the toes of the second If I may, I'd like to reserve five minutes of time for my rebuttal. And that is under your control so you have to manage that. Very good. Your Honors, my name is John Dunn. I represent Justin Hooper. He's the appellant in this matter. The facts of this case are very simple and very brief. Justin Hooper is a Choctaw Indian. On August 27, 2018, he was driving on the creek reservation within the bounds of the City of Tulsa. The exact location where he was stopped was annexed into the City of Tulsa in 1966. He was stopped and issued a traffic citation by a Tulsa police officer. Ultimately, he pled no contest and was fined $150. He filed for post-conviction relief which was denied and the appeal is part of the instant case with the District Court in this matter. Mr. Hooper has a credible fear that he will continue to, or the City of Tulsa will continue to attempt to enforce their traffic ordinances against him. That's not to say that he's planning to commit future traffic offenses, but even the best of us sometimes end up at the wrong end of a speeding ticket. We claim that the City of Tulsa has prosecuted and fined Mr. Hooper, who is an Indian, without having the jurisdiction to do so. The single question in this case is whether the Curtis Act still operates to give the modern day City of Tulsa jurisdiction over Indians within its city limits. We contend the answer to that question is no. The Curtis Act, which is also known as... I'm sorry, over here. Before you start with the Curtis Act, can you tell me what we're reviewing? Are we, and this gets into perhaps the Rooker-Feldman question, what is before us? What are we reviewing? Are we reviewing the ticket? No, Your Honor, I'm afraid not. I think that the proper thing is we're reviewing the finding of the district court as to the declaratory judgment action because the court, the district court never reached the issue of the post-conviction relief and so the ticket itself was never reached because the court determined that the Curtis Act gave the City of Tulsa jurisdiction and simply went no further. Okay, so we are not reviewing post-conviction? I don't think it would be properly before this court. In fact, the relief that I would intend to ask from this court is if the court decides that the Curtis Act does not continue to operate for the City of Tulsa, that the matter be reversed or the matter be remanded to the district court for further proceedings not inconsistent with this opinion. So we're only looking at the declaratory judgment? Yes, Your Honor. I believe that's correct. And how do we have jurisdiction to just look at the, to look at the declaratory judgment action? Your Honor, your jurisdiction arises from a number of different things. First, this is a federal question as to whether or not the Curtis Act, which is federal law, still operates on the City of Tulsa to give them that jurisdiction. Beyond that, the court would have jurisdiction because this is a, this is the only remedy that my client would have to challenge that applicability because he is an Indian, he would not have the ability to go to state court for such a determination. And beyond that, the district court found that it had jurisdiction on its own pursuant to, I believe it was 1331. Okay, thank you. We contend that the Curtis Act, the Curtis Act, is not a federal act, which was also known as an act for the protection of people in Indian territory and for other purposes is merely an artifact of history. It no longer operates. This is not a case of an implied repeal. That's not what we're saying. We're, this argument is a little bit more nuanced than that. The Curtis Act confers federal authority over Indians in a federal, for federal cities in a federal territory. At the time, Oklahoma Territory was a common territory and a territorial government. Indian Territory was different because it was occupied by the five tribes. And so it was Congress and the treaties and that's all that was there. There was no other legislature or body that could make or enforce law. So the Curtis Act comes along, moves Arkansas law to Oklahoma law, kind of a copy, or to Indian Territory, kind of a copy-paste thing. And then said beyond that, we've got these 50 or so. If you have 200 people, you can organize and charter yourself under the Mansfield laws from Arkansas, you're going to charter yourself in the district court for Indian Territory in Muskogee. And then you will have certain abilities and powers of a municipality and sort of some kind of self-governance. However, the set that the Curtis Act, and Tulsa did those things, there's no dispute of that. However, the set that the Curtis Act would grant authority to no longer exists. The Curtis Act grants authority to towns that were chartered under the Arkansas law, as we discussed, but when you read the Curtis Act carefully, it applies to such towns when so organized and authorized. When, in that sense, is a condition precedent. It requires that the town be organized in this manner, number one. And number two, it only operates as long as the town is so organized and so when Oklahoma became a state, the Wilson Law serves as the charter until the city is re-chartered. In other words, what happened as a result of the Enabling Act, which is Congress's clear intention of what they wanted to do, Oklahoma Territory grew to include Indian Territory. Indian Territory did not survive. Oklahoma Territory had the Wilson Laws that came from Nebraska. That spread into Indian Territory and by operation of law the cities were all re-charted under the authority of Wilson. Then Oklahoma's Constitution said if you guys want to re-incorporate and re-charter, you can do that under Oklahoma state law. Tulsa did so. And as a result, that charter superseded any charter that they had under the Arkansas law charter. Are there any cities that were in Indian Country that chose not to re-charter? Well, they really didn't have a choice because under the Enabling Act and under Oklahoma's Constitution, when Oklahoma's law spread into Indian Territory, the Nebraska law followed with it. And so they were automatically re-chartered as the default of whatever a municipality's law. Do you see a difference in the Curtis Act about the grant of jurisdiction over basically all people and the substantive laws that were brought over from Arkansas? Your Honor, I'm sorry. I'm a little hard. Oh, okay. Do you see a difference in the jurisdictional grant from the Curtis Act over all people including Native people and the substantive laws of Arkansas? The jurisdictional aspect arose because these municipalities were actually instrumentalities of Congress because there was no territorial government for them to be instrumentalities of. So that's where the jurisdiction issue comes from. The substantive law, in other words, then that would have been replaced when the Wilson laws came across if there was a substantive difference. But the jurisdictional part then changes also at statehood because it didn't matter what race you were, whether you were in town or not, you were subject to federal jurisdiction. If I stole a horse somewhere, I would have been in federal court if I wasn't in a municipal court. If that case was pending, when Oklahoma became a state, the Enablement Clause said or the Enablement Act said that that would have changed and I would then be in Oklahoma District Court in a county in wherever the horse thievery took place. And so the jurisdiction changed for everyone in that way automatically or by force of law. The deal of all races has to do with the jurisdiction conferred by Congress through the Curtis Act to federally authorized and organized municipalities within a federal territory. So therein is the difference. Why did they specify that there was going to be jurisdiction over all races? Wouldn't that have been presumed if this was just a federal court scheme? I don't necessarily know the answer to that question. I would be speculating. I would guess Mr. Congey could probably put a finer point on that. I won't take your time then. We'll let him write it down in his notepad. So Tulsa voluntarily recharges. And one of the questions that I would ask the court we talked about in the briefing is how are they acting? How have they acted? Have they continued to act as a Curtis Act town? Or have they abandoned that in favor of what powers and powers of the state? The answer to that question is first they have a municipal court, not a mayoral justice of the peace. The municipal court is limited to handle violations of municipal ordinance that are misdemeanors and traffic only. Their justice of the peace could handle civil cases and all criminal cases. It had the same standing as the U.S. Commissioner. They have state Tulsa Board of Education, which is a separate subset of the State Board of Education funded by the state of Oklahoma. Under the Curtis Act it was towns that could fund the government. Lastly, the Manfield Act requires or sets a maximum fine of $100. The City of Tulsa fined my client $150. And as someone who practices before their court regularly, I can tell you that most of their fines are well up above that. So your point is that they're not, that Tulsa is not acting as if it thinks it's still governed by the Arkansas Mansfield Act? Correct. The only thing that it's trying to hold onto is that phrase, all races. The rest of the act we would find no home for in the modern day Tulsa. But all of your arguments, I mean you say it's not an implied repeal of the Curtis Act Section 14, but there's certainly no express repeal of that section. Would you agree with that? I agree there's no express repeal. Our point is that even if the Curtis Act is valid law, it applies to municipalities that are number one, federally organized in a federal territory known as Indian Territory. That territory no longer exists and there's not a single city or town in Oklahoma that is still federally chartered. So even if it is still good law, it doesn't apply to anything any longer because everyone that was in that subset has left. And specifically the city of Tulsa voluntarily left when it reorganized and re-chartered under the laws of Oklahoma. And seeing I have three minutes left, if there are any further questions, I would entertain those. Otherwise, I would hold onto my time for rebuttal. Thank you. Thank you and may it please the court, the Muscogee Creek Nation appreciates the opportunity to argue as an amicus here. I'll start with Judge Carson's question. It was actually a radical shift in the Indian Territory to give the federal instrumentalities jurisdiction over the Indian peoples, Indian nations. And this court covered the issues well in its Murphy decision. Under the treaties, the Indian nations in the Indian Territory had been set aside as self-governing communities essentially with exclusive jurisdiction over their territories. But as we approach the end of the 19th century, Congress for several reasons, most notably a desire to allot those lands and to coerce the tribes essentially to agree to allotment, started providing for more and more jurisdiction of the federal instrumentalities over the Indian peoples. So really it was an effort to coerce allotment that the nations were in a radical shift in the law for the new state to enjoy jurisdiction over Indians that contrary to sort of fundamental principles of federal Indian law. And what Tulsa is arguing here is that section 14 accomplished that end. And this goes directly to your question Judge Carson about the difference between substantive laws and jurisdictional laws. The Curtis Act did nothing of the sort. What it did was to set up these towns again as federal instrumentalities and to provide them with jurisdiction over all their inhabitants regardless of race. But Judge McHugh, and this also goes directly to your question, we're not talking here about repeal of any kind. Express implied that's not our argument. The argument is that section 14 by its own terms applied only to those federal instrumentalities to the cities and towns that were incorporated under adopted federal law. Upon statehood those instrumentalities ceased to exist by operation of law. The enabling act had very clearly provided that upon statehood the laws of the Oklahoma Territory would extend throughout the state. The Oklahoma Constitution's section 10 of the schedule did exactly that, extended those Oklahoma Territory laws over the entire state. One of those laws was section 346 of Wilson's revised statutes which provided the chartering for municipalities and provided for their powers. So upon statehood these entities were reincorporated, rechartered as state entities. Now, not getting to the rechartering issue, but just talking a little bit about what happened upon statehood. I mean we do have a statement, I think it was in the Constitution, that said every municipal corporation now existing in the state shall continue with all its present rights and powers until otherwise provided by law. Yes, exactly. So if you were one of these federally chartered municipalities, I mean until they did something to you or until you took advantage of the new state laws, you maintained those rights and powers? So it's a key question and this is what the district court hung its hat on. The powers that were maintained were the present rights and responsibilities. And what the Oklahoma Supreme Court said in three decisions immediately after statehood, two in 1908, the Ledbetter and Bridges decision, and then the Lackey decision in 1911, construed that authoritatively to mean the powers that came into existence upon statehood, not the powers from the Indian Territory period. In both Lackey and Ledbetter, the Oklahoma Supreme Court said those powers did not survive. At the moment of statehood, the Oklahoma Constitution supplied the powers of the municipalities. It was those present powers that continued. And that Section 10 also says, and they shall also have additional powers under the Constitution. And what the court said in Lackey is that's the Article 18, Section 3 power, which was the power to then go and form your own, adopt your own charter if you wanted to as a home rule municipality, which is what Tulsa did the next year. So really, Tulsa twice over changed its corporate municipal form, jurisdictionally distanced itself from the Indian Territory entity that it had once been. And it was only that Indian Territory jurisdictional entity that had power over the Indians. The new state entities did not. You asked Judge Carson whether all the municipalities that had been Indian Territory municipalities re-chartered. I believe the answer to that is no. Many of them did become home rule municipalities with their own charters, but others did not. But even those were re-chartered pursuant to the extension of Oklahoma Territory law into the new territory. So do you believe the Curtis Act, Section 14 still exists? I mean, is it a valid law for whatever it is on the books? It's clearly still on the books. No argument there. But it became inoperative by its own force. And that's actually the term that the Oklahoma Supreme Court used in the 1908 Leadbetters case. It said it became inoperative because there was nothing left for it to operate on. It only operated on the such cities and towns that had been incorporated pursuant to the adopted federal law. Could the Constitution of Oklahoma, though, embed those rights that were provided in the Curtis Act by saying you retain whatever rights you had on the date of statehood? It was later that they re-chartered, right? After the Constitution was adopted. Right. So two points. Tulsa affirmatively re-chartered a year later. But upon the moment of statehood, they all re-chartered by operation of law. Section 346 of the Wilson Statute, the municipal code that governed first class cities, upon the moment of statehood, that was the responsibilities of the municipalities in the Indian Territory. And so a great example of this, in the Leadbetter case in 1908, the town of Muskogee, which is an Indian Territory municipality, under the Indian Territory laws, it was a city of the second class. Under the Oklahoma Territory laws, it was a city of the first class. And a dispute arose because that made a difference to the elections. And what the Leadbetter case said was, automatically, upon the moment of statehood, by operation of state law, Muskogee didn't have to do anything. It was re-classified as a city of the first class. Well, and my question's a little different. Yes, it's re-classified, but we have a constitutional provision that says you retain all the rights you had before the Enabling Act. And that's where I will respectfully disagree with you. The constitutional provision, section 10 of the schedule, says that the municipalities shall retain their present rights and responsibilities. And what the Oklahoma Supreme Court authoritatively construed that provision to mean, present rights are the ones that came into existence upon the moment of statehood. That's the key point. And the Bridges case from 1908, also Oklahoma State, over 100 years ago, that's been made today, the argument there was that the city of Chickasaw retained its Indian Territory powers, that those were the present powers referenced by the Constitution. And the Oklahoma Supreme Court said, no, what present means upon the moment of statehood going forward. And that's where I think, respectfully, the district court erred in interpreting present to mean retroactive to the Indian Territory without considering the authoritative construction by the Oklahoma Supreme Court itself. With the Court's permission, I'll reserve the balance of the time for collective rebuttal. Thank you. Good morning, and may it please the Court. My name is Christina Gray. I'm the Litigation Division Manager for the City of Tulsa City Attorney's Office. As this Court's aware, this case is presented to you under a somewhat unique set of facts, and that it arises from Congress and its plenary powers' grant of jurisdiction to the municipalities pre-statehood. Now, you've heard the argument in this case from the appellant and the amicus related to this isn't an implicit repeal case, this has to do with the city ceased to exist at the time of statehood. I believe that's a misreading of the Ledbetter case. If you continue with the Ledbetter case, which the tribe's attorney cites, it expressly says that while, and someone in dicta says, well, the City of Muskogee may have ceased to exist, that the Court didn't have to address that issue, because expressly, upon creation of the state, that the Constitution allowed municipalities in their current existence to continue into statehood. As with the discussion with respect to the Constitution language, that it allowed municipalities to continue into statehood, all rights and powers that they had prior to that. When did the Wilson laws become effective in Oklahoma? Respectfully, Your Honor, I don't have the answer to that question. I believe it would be post-statehood in 1907, which was when the Enabling Act was initiated in 1906, and then it became a state in 1907. I was relieved shortly after that, but I do not off the top of my head have the answer to that question. Okay, thank you. Instructive in this case is the United States Supreme Court case of Ex Parte Web, which is a 1912 case. But in that case, the discussion had to do with this argument of Oklahoma Territory versus Indian Territory, and which laws continued post-statehood. The Enabling Act expressly allows for the laws that were enforced at the time in the Oklahoma Territory to continue into effect as part of the Oklahoma Territory. However, with respect to Indian Territory, the Enabling Act is silent on that point. I mean, I know that's your argument, but it says it's not going to be Arkansas anymore. It's going to be laws that govern the Oklahoma section are now going to apply across the whole state, including the Indian section. With respect to state laws, absolutely, Your Honor. Obviously, Oklahoma is now a state and has the ability to create its own laws in its own state. That's the Schulte and the Jefferson cases out of the United States Supreme Court, which talk about things like corporate existence into state succession. Those things, the previous Arkansas laws, have now obviously been replaced. They've been supplanted. They have been supplanted, but that doesn't supplant the federal grant of jurisdiction given by Congress. State cannot somehow supplant the fact that Congress gave this jurisdictional grant and didn't undo it. We look at statutory laws of construction. I know the appellant doesn't want to consider this an implicit repeal case, but it does bring up ideas of implicit repeal here when we talk about the fact that the Enabling Act did not repeal that section of the Curtis Act and that Congress still retained the ability to provide and govern jurisdiction over Indians and never expressly removed that jurisdiction from the cities. If you look at the Curtis Act specifically and if you treat it as a grant, it's a relatively specific grant limited to, as I read it, cities that are organized and governed under the Manfield Act out of Arkansas. What I would say is that specifically, you had to do specific steps to organize and become a city under the Curtis Act, but I don't believe what it says is only those cities organized under the municipal laws of the Mansfield Digest. What it says is for those cities, while there's not an existing law, the Mansfield Digest will apply. There is no sunset clause. When so authorized and organized, that has to mean something. Yes. The section one of the Curtis Act has a provision for how you organize under the Mansfield Act. There was a provision that allowed for incorporation, not all cities incorporated pursuant to or under the rules of the Curtis Act. There's no dispute in this case that the city of Tulsa did what it was required to do. I believe Mr. Dunn admitted that in his presentation, that there's no dispute that the city organized and did the steps necessary. You would agree that today Tulsa is not authorized and organized under the Mansfield Act from the state of Arkansas? I would agree with that. The city of Tulsa does not follow the laws of the Mansfield Digest, but how we were incorporated was still consistent with the Curtis Act. That grant does not attach to only when the laws of Arkansas are being applied. It attached to cities that are properly incorporated pursuant to the Curtis Act's provisions, section one, and the city of Tulsa did that. Just because the basic laws of the state changed doesn't necessarily take away Congress's consent of authority with respect to Indians. That is in the plenary power of Congress, and they didn't take it away pursuant to the Enabling Act. The recent Supreme Court cases in McGirt and Castro-Hurta are relatively instructive on this point with respect to the fact that maybe Congress intended, there's a lot of discussion in the briefs about maybe Congress's intent with respect to that it was only intended to be a provisional thing until statehood. However, Congress never included in the Curtis Act any kind of sunset clause, any kind of statement that said only these cities and only for this time period. It's an open-ended thing. In Ex Carte Web, the case I referenced earlier, the discussion in that case has to do with whether Congress continued to maintain, and those pre-statehood acts of Congress with respect to Indians continued post-statehood. That case had to do with transfer of interstate liquor, and specifically the court said just because it was silent with respect to Indian territory laws didn't mean that they gave up that right. That Congress still had the ability to enforce, and within their plenary powers, control issues with respect to Indians, and that it continued to do so. It didn't wipe out everything that predated statehood with respect to Indian territory, and that's with respect to the Ex Carte Web case is instructive here that anything predating statehood with respect to Congress's plenary power was not wiped out with that respect. With respect to municipal courts, the appellant brought up the issues of the fact that municipal courts are, you know, the prior were police courts and mayoral courts, and now there's police courts, but when you look at the Mansfield Digest, it specifically included police or city courts, and that I believe the district court correctly found that this is a logical conclusion with respect to the evolution of the court system. Just because the city of Tulsa doesn't call its municipal courts police courts anymore, there is still that function, and within statehood, the state allowed for the continuance of municipal courts and municipal existence. Oh, go ahead. No, go ahead. No, I insist. Oh, I just... One follow-up, then. I'm sorry. All right, so do you view your municipality as a Curtis Act municipality? I mean, I guess what you've gone into now is sort of, you've kind of done some of the things that the Curtis Act envisioned, but you said you didn't have to do that. So I'm confused about that point. Did you... I'm sorry. I couldn't hear the first part of your question. Okay. So you started arguing that it didn't matter if you were doing anything listed under the Curtis Act, but now you're arguing that you are doing some of the things, and so I'm trying to understand how is your... Maybe how is your argument now related to your earlier argument? Sure. I believe the earlier question from Judge McHugh had to do with whether or not the city was still following or governed by the laws of Arkansas, and to that point, I said that we're not governed currently by the laws of Arkansas. We would agree that we are the city of Tulsa, as our other cities are governed under the state. But when we're looking at with respect to did the Curtis Act cease to exist, or did with respect to the Curtis Act, I do think that we are still a Curtis Act city. So to the extent that that was a confusing point, I apologize. The city of Tulsa remains that it is a Curtis Act city. It was incorporated under the Curtis Act. Statehood did not extinguish and then remake the city of Tulsa. What about reincorporation under state law? Did that remake it? I don't believe that it remade it. I don't believe that's the reading of the Ledbetter case or the Lackey case is that they were remade. I believe in fact... I thought the city of Tulsa was specifically rechartered under Oklahoma state law. And to the extent that it's rechartered, it allows existence, correct? I mean, I don't believe that there's any case law with respect to, well, the city of Tulsa has somehow ceased to exist because it's now been rechartered in the Ledbetter case. No, I understand that. I guess my point might be more to the line of, isn't it a plausible argument that the city of Tulsa renounced any authority it had under the Curtis Act by rechartering under state law? I don't believe so. I mean, with respect to a continued... You won't even give me that it's plausible? I will not give it to you. Okay. So with respect to jurisdictional grants, that jurisdictional grant continued with respect to the cities that were chartered with under the Curtis Act. Just because they eventually rechartered under the city is not somehow an express denial of those. When it was rechartered, it was under the Oklahoma Constitution, which expressly allowed for them to continue their incorporation, which they had prior to statehood, and expressly allowed them to continue with all rights and privileges they had prior to statehood. So any rechartering would be with the presumption that the Constitution applies that allows those pre-existing jurisdictional grants to continue. Once they rechartered, though, they were no longer operating under Mansfield's gigest of the states of Arkansas. Right. I mean, once they became a city within the city of Tulsa, they're operating now under Oklahoma's laws for substantive issues, but that doesn't mean that Congress within its plenary power... Where do you see the split about substantive and jurisdictional... Well, I mean, with respect to cases like the Schulte case and the Jefferson case, they talk about expressly with respect to replacing laws or having those laws that relate to not to impose on the powers of the state, right? And so our argument would be with respect to that point that the state is allowed to come in and make certain laws and govern the municipalities, but Congress has plenary power over relations with Indians. But when Congress gives jurisdiction and limits that jurisdiction to these Mansfield cities, I mean, that is Congress's choice to not give blanket jurisdiction, but to give it limited to a specific situation. And that doesn't somehow get changed, does it? You can't modify the language of the Curtis Act by reorganizing under Oklahoma law. Right. I would agree with you, but I would agree that I believe the Curtis Act states that you become a city under the Curtis Act by incorporating within those provisions and then the laws of Arkansas apply. So just because eventually different substantive laws apply doesn't take away that grant of jurisdiction with respect to what Congress has plenary power over. Let me make sure I understand. So your position is that the laws of Arkansas did not grant you authority over Indians. That was federal law, right? And the Curtis law just directed you to the laws of Arkansas, so you would have the federal courts in Arkansas would have, or the municipal courts in Oklahoma would have a law to apply. Correct. And that's exactly my interpretation, is that there are several sections of Section 14. It has to do with elections, it has to do with establishing schools, and that establishing that the laws of this time, of these territories, of these cities, is the Mansfield Digest, is a substantive decision with respect to what the substantive laws will be until later supplanted. But that is a separate sentence from eventually later on down Section 14 that it says, and these cities will have jurisdiction over all inhabitants to enforce its ordinances against all inhabitants of the city. That is a separate grant. To your point, Judge Carson, it's a separate grant of authority, as opposed to the substantive laws of Arkansas will continue until statehood, essentially, or until those are changed, which they were at the Enabling Act, allowing the state of Oklahoma to establish a constitution and the legislature discipline laws and the Oklahoma territory laws to continue. The jurisdictional statement is separate, and that has not been changed, and that is within Congress's plenary power to change. So I think this does become an implicit repeal case when you look at whether Congress has ever taken that back, and with respect to the Enabling Act, it has not taken back that specific grant of authority with respect to all inhabitants. Not to venture into the areas of implication that everybody says are not in play here, but you agree that Congress gave the state of Oklahoma, upon its admission, no authority over Native Americans? I agree that there was no express... No jurisdiction, how's that? And it made the Indian country part, the Indian territory part of the state of Oklahoma. Correct. And so doesn't it logically follow that it took it away by doing that? It does not, Your Honor. That goes back to the Ex Parte Web case. So the first part of the Enabling Act expressly talks about the fact that, to the extent that anything in the Enabling Act is read to remove Congress's plenary power over Indians or Indian relations, that that remains with Congress. That's expressly in the Enabling Act. And so to the extent, then, that that was somehow intended to preserve those powers, the Ex Parte Web case says that includes retroactive and that those remained in effect. I am out of time, so I appreciate it. Thank you, Your Honor. Thank you. May it please the Court, Anthony J. Ferrati for Amicus Oklahoma Association of Municipal Attorneys. Section 14 of the Curtis Act is an example of congressional plenary power in its unique relationship in Indian, with two Indian tribes. In McGirt v. Oklahoma, Justice Gorsuch wrote that state courts generally have no jurisdiction to try Indians in Indian country, but he went further, noting at several points that Congress has plenary power over Indians under Article I, Section 8. Enacted by Congress in 1898 and reenacted by agreements with the tribal nations of Oklahoma between 1898 and 1902, Section 14 of the Curtis Act was recodified, but never repealed. This makes the argument of Mr. Hooper and his amici oddly similar to that of Oklahoma and McGirt, which the Court said was substituting stories for statutes. A clear expression is right before them. Just as that clear expression exists that reservations have not ceased to exist in eastern Oklahoma, so was municipal authority granted under the Curtis Act and never revoked. I'd like to address a few of the comments that we've heard previously from appellant and amici. The first one I want to address is Judge Carson. In Oklahoma, we don't like to admit we got anything from Nebraska except a win. We would contend that Nebraska law came into effect at statehood at that point. I don't think that there's any question about that, that the Oklahoma Territory statutory structure was actually adopted into the federal system at that point. But what we heard overall from both appellant and amici is that there's no express repeal, there's no implied repeal. So what are we left with? We're left with a Curtis Act that actually remains in existence. There can be nothing else. Well, and then the question becomes whether the Curtis Act as written still has any force and effect when you have Tulsa no longer a Mansfield Digest, Arkansas city. I mean, that's the argument as I understand it. Well, I think that there's a very simple answer to that, and that is that the Enabling Act came into effect. The Enabling Act did not repeal what had occurred in the Curtis Act, and it didn't grant jurisdiction or authority over Indians to Oklahoma. We now certainly know that as a result of the GERD. We can't question that at this point. And so where does that authority over Indians exist in Indian Territory if not for the current existence of the Curtis Act? Well, and I take you back to the language of Section 14 that talks about that you're, it's a city that's incorporated as provided in Chapter 29 of Mansfield's Digest of the Arkansas, if not already incorporated there under which is Tulsa, and such city or town government, when so authorized and organized, then it says what powers they shall have. So my question is, are you still authorized and organized under the Mansfield's Digest of the Statutes of Arkansas in Tulsa? Yes, Your Honor. Your Honor, that goes to the point that we made in our brief on this, that territorial laws under Article 4 of the U.S. Constitution, Congress can choose what those laws would be. And then under its Article 1 authority, when it comes into place, the statehood comes into place, as it did through the Enabling Act, there's an allowance for a state to enforce its own laws in that situation. So I don't think that it's relevant that we dwell on Arkansas law or what's in Tulsa. Well, is it relevant that we dwell on the plain language of Section 14 of the Curtis Act? Section 14 of the Curtis Act gave municipalities authority to exist within Indian Country. State of Oklahoma came into existence, that still remains. And the Enabling Act is the device that made that change. That's where we are. And without the Curtis Act, the question is, what municipalities, what authority do municipalities have at that point to enforce their laws? We currently have a situation where, frankly, the U.S. administration, of course, has made very clear, administrative offices of the U.S. courts have shown that in the Eastern Oklahoma, compare that to the robberies, the larcenies, the burglaries, those are not equivalently being prosecuted in Eastern Oklahoma. Not only there, but not in the tribal courts either. So essentially, we would be setting up a schematic where municipalities also have no authority. And remember here, we're talking about petty offenses. Well, you're talking about the Parade of Horribles, which I think that Justice Gorsuch was pretty clear in McGirt that that's not our job. We apply it as it's written, and it's Congress's job to do something different if the result is untenable. And I think that Congress set up a very clear way to deal with criminal jurisdiction within Indian Territory. They set the Major Crimes Act to deal with the most gruesome of crimes that we deal with. They set up the General Crimes Act that gave authority to tribes over tribal citizens and federal issues as well. And in the Curtis Act, what they did was they set up that municipal grant of authority. And that municipal grant of authority has to continue today. The Curtis Act didn't...Utah didn't get the benefit of Section 14 of the Curtis Act, did it? This was written specifically...the Curtis Act was specific to Oklahoma. This was not about Utah, Colorado, or any other... And my point is, so Congress didn't think that this was the solution that had to apply to every state where you have Indians residing in Indian Country that might violate overlapping municipal law. But you didn't have a situation in Utah or Colorado or any other state where Eastern Oklahoma was supposed to be actually the state of Sequoia, never came into existence. But the state of Sequoia was supposed to exist for the native tribes. Now, right or wrong, they decided to put the Oklahoma Territory and the Indian Territory into one state. They had to figure out what to do. But if this court were to say that the Curtis Act is inoperative at this point, you would be not allowing the state to operate with one sense of jurisdiction. You would be saying that people in Elk City and Enid have jurisdiction over Indians in their municipals, and in Tahlequah, they would have no authority over municipal. You'd be setting up a two-point structure within the state of Oklahoma if you were to say otherwise. Doesn't that exist any time you're talking about Indian Country? I mean, typically, I think both the Supreme Court cases, well, Castro-Hurerta makes very clear, they are not telling us what the law is when you're dealing with the prosecution of an Indian in Indian Country. It's a unique situation, and what complicates it is that nobody thought Tulsa was Indian Country until, I guess, Murphy and then McGurk. But the magical thing that exists, Your Honor, is the Curtis Act essentially has given Eastern this whole time. Despite the fact that we didn't realize that Indian Territory existed, it granted that authority for municipalities not only to exist, but to prosecute their crimes during this time. And so, I respectfully disagree on that point, that somehow there's been no authority for them to operate under. I don't think I said there's no authority for them to operate under. The question is whether the Curtis Act still has any utility in modern day given the changes since it was written. And I would argue very clearly that it must. As a result of McGurk, and I think that it did prior to McGurk, but I think more specifically as a result of McGurk, that it is that clear expression that Justice Gorsuch talked about when he wrote McGurk. It is that clear expression of Congress that still exists, that has not been repealed, that is still operative, that still exists today. I see I have just a few seconds left. Certainly, if there's any other questions, I'm happy to stand for them. Okay. Thank you. Yeah. Thank you very much. Your Honors, if I may, I'd like to defer my rebuttal time to counsel for the Creek Nation, Mr. Congey, because of the vital tribal government's issues that have been raised on OMA, but also the Curtis Act in general. That's fine. You might want to give the clerk a minute. You're going to consolidate. She just did. Okay. Thank you. Thank you. And again, the Amicus Nations appreciate the opportunity to argue. I think Judge McHugh summarized our case perfectly. It is grounded in the text of Section 14. That was a limited grant. It was limited to the entities organized and authorized under the adopted federal law. Tulsa has told this court today that it does not consider itself to be authorized and organized under Section 14. I don't see how it could say anything different, and the Enabling Act certainly did not accomplish anything different. The Enabling Act paved the way for statehood and extended, provided that the Oklahoma Territory laws would extend over the entire state. The argument to the contrary is really a radical argument that would not obtain anywhere else in this country. The notion that Congress intended for federal instrumentalities to survive and to litter the entire eastern half of the state and to maintain some amorphous set of powers ossified in time because these really are federal instrumentalities that have survived the state and the state charted municipalities would have no authority to affect or alter their powers. I honestly think the state has not fully thought through the implications of the argument and of its support for Tulsa here, which really are very, very radical. But our argument distills down to the text. The only thing else we heard in response are some aspersions, which honestly were not appreciated and, as Judge McHugh said, were irrelevant. Justice Gorsuch made clear in McGirt that these blown up, skies falling kind of claims do not affect the court's interpretation of the text. They're also contradicted by what's in front of this court here, the record. There are cross-deputization agreements in place throughout eastern Oklahoma for the Muscogee Creek Nation itself, 64 such agreements. There have been over, in two years, after McGirt, over 4,000 referrals in each direction between the nation and local units of government and the state itself for all manner of crimes, including for traffic offenses and those with respect to the Oklahoma Highway Patrol, many other municipalities in eastern Oklahoma. There are constant referrals of traffic citations and prosecutions. It's only Tulsa that has, for some reason, chosen this hill to try to fight and die on. I want to, before you run out of time, the argument that I think they're making that really like you address is that whatever power the city of Tulsa had at the time of the Enabling Act, including its jurisdiction over Indians in what is now determined Indian country, remained because all rights that they had at the time of the Enabling Act, they retained. I think the two answers. In the Enabling Act itself, there is no language to that effect. There's no language for them to point you to. I'm sorry, she said Constitution. And then the Constitution, the only language they can hang their hat on is the language of Section 10 of the Schedule, which talks about the present rights and powers. And again, that was authoritatively construed. That's a state constitutional provision, so authoritatively construed by the Oklahoma Supreme Court in both the Bridges case in 1908 and the Lackey case in 1911 to refer to the powers that came into effect upon the moment of statehood. And Judge Carson asked counsel about when the Wilson statutes extended and led better in 1908. The Oklahoma Supreme Court said very clearly, upon the moment of statehood, these Indian territory forms of government ceased to exist. And it's language that speaks directly to this case. And instead, they became state chartered entities. I don't want to overstate my welcome, but if the court had any questions or was thinking about entertaining the state's argument, and I know the state's not here today, but about how the state post-Castro Huerta has somehow assumed jurisdiction over Indians, I would love to entertain or discuss that for one minute. But on the Curtis Act, we appreciate the questions. All right, thank you. Thank you very much. And will you add another 38 minutes to their rebuttal time? 38 seconds. 38 seconds, sorry. Sorry. I'll miss my flight. Yeah. The only one of you, I think, has rebuttal time. Does, do they? Oh, well, then we'll give you 38 seconds if you want it, to be fair. Your Honor, I'm happy to yield it. Thank you. I want you to make your flight. Thank you. All right, we will take this very complicated matter under advisement.